**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:  lking@kaplanfox.com
        mgeorge@kaplanfox.com
        breed@kaplanfox.com
        colivares@kaplanfox.com

*Attorneys for Plaintiffs Mariana Bernasconi Pelufo,*
*Eleisha Sadasey, Behnaz Faridian Kade, Mirza Baig,*
*and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANA BERNASCONI PELUFO, ELEISHA SADASEY, BEHNAZ FARIDIAN KADE, and MIRZA BAIG, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUNA BABY ESSENTIALS, INC.,<br><br>Defendants. | Case No. 3:25-cv-02961<br><br>**Class Action**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs MARIANA BERNASCONI PELUFO, ELEISHA SADASEY, BEHNAZ FARIDIAN KADE, and MIRZA BAIG, individually, and on behalf of themselves and a Class of those similarly situated ("Plaintiffs"), bring this action by the undersigned counsel against Defendant NUNA BABY ESSENTIALS, INC. ("Defendant" or "Nuna") based upon personal knowledge of the allegations pertaining to themselves, and upon information, belief, and the investigation of counsel as to all other allegations.

## I.    INTRODUCTION

1.    Plaintiffs Mariana Bernasconi Pelufo, Eleisha Sadasey, Behnaz Faridian Kade, and Mirza Baig, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against defendant Nuna Baby Essentials, Inc. for developing, marketing, and distributing the defective "RAVA" Convertible Car Seat ("RAVA" or "RAVA Car Seat")[1] throughout the United States.

2.    The RAVA Car Seats are marketed as "convertible" car seats, meaning that they are designed to adjust to accommodate a child from infancy to childhood, beginning as a rear-facing car seat for infants and children from 5 to 50 pounds which can be converted to a forward-facing car seat for children at least 2 years old. As children continue to grow, the car seat can be extended to secure children up to 65 pounds.[2]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] The RAVA product line includes several substantially similar models: CS-50-001 Caviar, CS-50-002 Indigo, CS-50-003 Berry, CS-50-004 Blackberry, CS-50-005 Slate, CS05101CHC Charcoal, CS05103CVR Caviar, CS05103FRT Frost, CS05103GRN Granite, CS05103LAK Lake, CS05103OXF Oxford, CS05103ROS ROSE, CS05115DDC Droplet Dot Collection, CS05105BAC Broken Arrow Caviar, CS05106BRS Brushstroke, CS05107RFD Refined, CS05109RVT Riveted, CS05110LGN Lagoon, CS05110EDG Edgehill, CS05111OCN Ocean, CS05114CRD Curated, CS05104THR Threaded, and CS05101HCV Verona. *See* https://nunababy.com/recalls-rava1 ("Recall Notice"), *last accessed March 26, 2025.*

[2] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720, *last accessed March 26, 2025.*

3.    The RAVA Car Seats are sold for approximately $550.00,[3] significantly more expensive than similar convertible car seats:



4.    The RAVA Car Seats do not meet minimum standards of operating with the necessary level of safety. Defendant designed over 600,000 RAVA Car Seats manufactured between July 16, 2016 and October 25, 2023 without a cover over the front harness adjuster button, which controls the tightness of the Car Seat straps (the "Defect").[4] As a result, debris—whether from snacks, toys, or any of the endless variety of debris a child can produce—that falls into the front harness adjuster area can "imped[e] the mechanism from properly clamping on the strap," causing the RAVA Car Seat straps to loosen.[5]

5.    As a result of this dangerous Defect, toddlers and children can—and indeed have—loosen the straps of the RAVA Car Seat and even get out of the RAVA Car Seat while their parent

---

[3]  https://brixy.com/products/nuna-rava-monterey-convertible-car-seat-exclusive, *last accessed March 26, 2025.*

[4]  Recall Notice; https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990, *last accessed March 27, 2025.*

[5]  https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990

is driving. In the worst-case scenario, a child could be insecurely fastened during a car accident, leading to injury or even death.

6.    This is a dangerous Defect which Defendant knew of or should have known and warned customers about, and which has been experienced and reported by disappointed consumers firsthand after the point of sale. No reasonable consumer would purchase a premium, expensive car seat to transport babies and children that has or could develop a serious safety defect that could harm or even kill their child.

7.    Defendant touts the RAVA's "unwavering security," "all-steel frame," and "energy absorbing foam" to convince safety-conscious parents to shell out for an expensive car seat,[6] but all of those safety features are for naught if the RAVA Car Seat fails in its most basic purpose: securely fastening children into the RAVA. As Nuna itself states on its website: "A loose harness may not properly restrain the occupant, increasing the risk of injury in a crash."[7]

8.    Nuna represents the RAVA Car Seat as safe because it knows parents like Plaintiffs are concerned for the safety of their children and are willing to pay top-dollar for the safest car seat possible. No reasonable consumer would purchase a premium, expensive car seat to transport children that has or could develop a serious safety defect that could harm their child.

9.    Unfortunately, all consumers who purchased a RAVA Car Seat received a defective and unsafe car seat. The RAVA Car Seats suffer from a significant product safety Defect and as of December 20, 2024, are subject to a major national recall.[8]

10.    While some consumers can no longer use their RAVA Car Seats because of the Defect, others, whose RAVA's do not show damage at this time or who simply cannot afford to replace their $550 RAVA, now fear for their children's safety because the Defect can manifest while in ordinary use—indeed, the Defect's manifestation is *caused* by perfectly ordinary use. Some consumers have resorted to purchasing substitute car seats.

---

[6] *See* https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720

[7] *See* Recall Notice; *see also* https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990.

[8] *See id.*

11.     While there is a significant resale market for used car seats, the defective, recalled RAVA Car Seats in this case have experienced a significant loss in value and useful life because of these issues. And, instead of providing a refund for customers with the RAVAs, Defendant has only offered a "seat pad and cleaning kit" (Cleaning Kit") purportedly intended to prevent the front harness adjuster button from accumulating debris.[9] Through this suit, Plaintiffs request a full refund and/or applicable damages on these expensive RAVA Car Seats, as well as all other appropriate relief.

## II.    PARTIES

12.     Plaintiff Mariana Bernasconi Pelufo resides in the State of California in San Francisco County.

13.     In September 2019, Ms. Bernasconi Pelufo purchased a RAVA Car Seat for $444.44. After that RAVA Car Seat was involved in a car break-in, Ms. Bernasconi Pelufo then purchased a second RAVA Car Seat in November 2019 for $399.99.[10]

14.     Plaintiff Eleisha Sadasey resides in the State of California in Orange County.

15.     Ms. Sadasey purchased her RAVA Car Seat from a brick-and-mortar store, likely a Nordstrom, for approximately six hundred dollars ($600).[11]

16.     Plaintiff Behnaz Faridian Kade resides in the State of California in Los Angeles County.

17.     In 2021, Ms. Faridian Kade purchased a RAVA Car Seat from Pottery Barn for approximately $550.00. On or about August 24, 2022, Ms. Faridian Kade purchased a second RAVA Car Seat from Bloomingdales for $547.45.[12]

18.     Plaintiff Mirza Baig resides in the State of Virginia.

---

[9] *Id.*

[10] Ms. Bernasconi Pelufo gifted her remaining RAVA Car Seat to a friend around February 2023, after her child outgrew it.

[11] Ms. Sadasey's RAVA Car Seat has a model number of CS05103CVR, serial number of 0199124, and was manufactured on January 4, 2021 in Morgantown, PA.

[12] Ms. Faridian Kade's RAVA Car Seats have model numbers of CS05103CVR and CS05103ROS, serial numbers of 0788875 and 0552308, and were manufactured on September 4, 2021 and June 9, 2022, respectively, in Morgantown, PA.

19. Mr. Baig has purchased a total of three RAVA Car Seats: two from Nordstrom for $550.00 each and one from Saks Fifth Avenue for $423.99.[13]

20. Defendant Nuna Baby Essentials, Inc., is headquartered at 70 Thousand Oak Blvd., Morgantown, Pennsylvania 19543-8878. They are owned by Nuna International B.V., a subsidiary of Wonderland Nurserygoods, a Taiwanese company.

### III.    JURISDICTION

21. This Court has personal jurisdiction over the Defendant. The Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d). Defendant has transacted business and affairs in California and has committed the acts complained of in California. The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and this case is a class action in which some members of the Class are citizens of different states than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. Defendant has transacted business and affairs in this district and has committed the acts complained of in this district.

### IV.    FACTUAL ALLEGATIONS

#### A.    Nuna's RAVA Car Seats and Representations

23. Nuna develops, manufactures, markets, and sells car seats, including all variations of the RAVA Car Seat. Per Nuna's website, consumers can purchase the RAVA at Brixy, where it is listed for $550.[14] The RAVA Car Seat is also available at other online and brick and mortar vendors throughout the United States, including such as Nordstrom, Bloomingdale's, Pottery Barn Kids, Neiman Marcus, Kidsland USA, and others.

---

[13] Two of Mr. Baig's RAVA Car Seats have a model number of CS05103GRN and were manufactured on December 16, 2022 in Morgantown, PA. Their serial numbers are 1098330 and 1098325. Mr. Baig's third RAVA Car Seat has a model number of CS05103CVR, serial number of 0505182, and was manufactured on June 19, 2023 in Morgantown, PA.

[14] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720; https://brixy.com/products/nuna-rava-monterey-convertible-car-seat-exclusive.

24.     The RAVA Car Seats are marketed as "convertible" car seats, meaning that they are designed to adjust to accommodate a child from infancy to childhood, beginning as a rear-facing car seat for infants and children from 5 to 50 pounds which can be converted to a forward-facing car seat for children at least 2 years old. As children continue to grow, the car seat can be extended to secure children up to 65 pounds.[15]

25.     On information and belief, Plaintiffs allege that sometime around 2020, Nuna represented that the RAVA Car Seat would expand to grow with consumers' children, and last 10 years. Consumers have discussed this representation online.[16]

26.     The RAVA Car Seat is marketed as "a reliable anchor to your child's car-riding adventures and your parental peace of mind[.]" Nuna promises that consumers who buy a RAVA Car Seat "can trust in its unwavering security[.]"

27.     On the "Features & Specs" page for the RAVA Car Seat, Nuna begins by listing six safety features, including several promising that consumers' children will be securely fastened into the RAVA. Specifically, Nuna advertises the RAVA's:

- "All-steel frame and reinforced belt path for superior protection
- EPO energy-absorbing foam and Side Impact Protection (SIP) pods for ultimate safekeeping
- Simply™ secure installation for confidence every time
- True tension™ doors provide a secure fit without the struggle
- Colored belt path indicators decrease risk of install errors
- Quick-release 3 to 5-point harness makes it easy to fasten them in[.]"[17]

---

[15] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720, *last accessed March 26, 2025*.

[16] *See, e.g.,* https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717 complaint dated February 21, 2023 noting the RAVA's "10 year expiration date"), *last accessed March 27, 2025*; https://community.babycenter.com/post/a75754862/nuna-rava-worth-the-hype (comment asking: "Will [the RAVA Car Seat] make it the 10 years as advertised?"), *last accessed March 27, 2025.*

[17] https://nunababy.com/usa/rava-convertible-car-seat?srsltid=AfmBOopFQv7moc_ChKyNB1t307uXOhlKevl9vL5n2UkBZWWGHOm3yHe1&color_ref=16957, *last accessed March 26, 2025.*

28.    As evidenced by the supremacy of safety considerations in its marketing, Defendant knows that safety is the paramount consideration of parents purchasing a RAVA Car Seat. For example, Defendant boasts that "Nuna's luxurious car seats are engineered for growth keeping baby to 'tween safe at every stage. Combining safety with high design, Nuna's car seats are mindfully manufactured[.]"[18] In its "Car Seat Headquarters" webpage,[19] Defendant describes its purportedly top-of-the-line safety features at length:

## Unique safety features







**A.** True tension™ doors ensure an ultra-secure fit in vehicle without the struggle.

**B.** Bubble-free installation—Designed and engineered to give you the ability to choose your preferred recline angle without the need for a bubble indicator.





**C.** Steel reinforced True lock™ and rigid latch—True lock™ installation makes set up swift, simple and above all—safe.

**D.** Aeroflex™ side impact protection—Aeroflex™ foam is cleverly lightweight, resilient, and minimizes force transferred to baby by absorbing and diffusing energy.

**E.** Multi-position steel stability leg reduces forward rotation of the car seat, absorbs impact, and minimizes forces transferred to the baby in the event of a vehicle crash.

29.    But all of these highly-marketable safety innovations are for naught if the RAVA Car Seat fails to perform a car seat's most basic function: keeping children buckled in the seat.

---

[18] https://nunababy.com/usa, *last accessed March 26, 2025.*

[19] https://nunababy.com/usa/us-car-seat-headquarters, *last accessed March 26, 2025.*

**B.    The RAVA Car Seat Defect and Recall**

30.    On December 20, 2024, Nuna instituted a "voluntary recall" for 600,000 RAVA Car Seats manufactured between July 16, 2016 and October 25, 2023.[20]

31.    This Recall concerns a "loose harness [that] may not properly restrain the occupant, increasing the risk of injury in a crash."[21]

32.    Due to this Defect, debris that enters the area where the front harness adjuster button is located "may cause the teeth of the adjuster mechanism to no longer properly clamp onto the adjuster strap, resulting in the harness no longer remaining tight."[22]

33.    The Recall Notice states that, when the Defect manifests, consumers should immediately stop using the RAVA Car Seat.[23]

34.    Put differently, despite Defendant's representations about the safety of the RAVA Car Seat, the RAVAs do not meet the bare minimum standards of operating with the usual and expected level of safety due to the Defect in the RAVA's design. The RAVA Car Seat lacks a cover over the front harness adjuster button, which controls the tightness of the RAVA's straps. As a result, debris, including from snacks, toys, etc., that falls into the front harness adjuster area can "imped[e] the mechanism from properly clamping on the strap," causing the RAVA's straps to loosen.[24] Once the RAVA's straps are loosened, a child can crawl out of their car seat, or, in the case of a car accident, be seriously injured or even killed.

35.    This is an extremely dangerous Defect. As anyone familiar with children, or even well-versed in the Peanuts, will understand, children leave behind debris of all kinds—from crumbs of puff snacks, to melted ice cream, to bits of tanbark and twigs—even under the watchful eye of a guardian. Every defective RAVA Car Seat is therefore likely to manifest the Defect at some point.

---

[20] Recall Notice; https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

1
2
3
4
5
6
7



8    36.    Dr. Alisa Baer, a pediatrician and co-founder of The Car Seat Lady, an advocacy

9    organization devoted to preventing children's injuries in cars, confirms this. "The looser the child

10    is in the straps, the longer it takes to stop," she explained.[25] "You do not want to make contact with

11    anything except your seat belt or car seat straps in a crash."[26]

12    37.    When dirt, crumbs, or other debris enter the harness adjuster, "children can

13    accidentally loosen the car seat straps if they lean forward because the locking mechanism might

14    not work[.]"[27]

15    38.    Moreover, Dr. Baer confirmed the obvious: "Children are not known for their

16    neatness," meaning that the Defect is likely to manifest.[28]

17    39.    Consumers confirm this as well. For years, consumers have been complaining online

18    and directly to Nuna of the RAVA Car Seat's straps coming loose even when tightened by the

19    consumer. For example, the National Highway Traffic Safety Administration ("NHTSA") has

20    seventeen (17) pages of complaints regarding the RAVA Car Seat, with consumers nationwide

21    complaining of the RAVA's loosening straps since late 2020, four years before Nuna initiated its

22    Recall.[29] The complaints include, e.g.,:

23    • "THE CONTACT STATED THAT WHILE ATTEMPTING TO SECURE
         THE CHILD IN THE CAR SEAT, IT WAS DISCOVERED THAT THE

24    _____

25    [25] *Id.*

26    [26] *Id.*

27    [27] *Id.*

28    [28] *Id.*

[29] https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717, *last accessed March 27, 2025.*

STRAP LOCKING MECHANISM WAS FAULTY AND WOULD NOT REMAIN SECURED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER AND DEALER WAS NOTIFIED OF THE FAILURE."[30]

- "We were leaving a car dealership to head home, my husband put our toddler in his car seat and after doing the pinch test, pulled on the chest buckle to make sure it was tight enough. When he pulled the chest buckle, it loosened both harness belts. We attempted the same scenario over 20 times and each time you could pull on the chest clip and retract both harness belts. Without pushing the button to retract. Nothing is stuck in the car seat as our child doesn't eat or drink in his seat. We uninstalled and reinstalled, opened the seat, etc and there is no issue that we could correct. Our son's life was in danger driving home last night. If we were to have gotten in an accident, the force of the crash would have jolted his body forward and loosened the harness."[31]

- "My child was secured in the car seat: chest clip, buckled, and the harness pulled to secure. Without pushing the release button, the harness comes loose when pulled . . . . If coming to an abrupt stop, my child may have come out of the seat."[32]

- "I am able to loosen the harness by lightly pulling on it without use of the harness release button. The harness is not holding the child in place and if there were an accident it would do nothing to protect him or keep him inside the vehicle. Nuna has been contacted and is replacing the car seat shell but advised this is a "courtesy" since it is outside of the 2 year warranty. It is ridiculous that this could ever happen especially since the car seat has a 10 year expiration date and a convertible car seat is supposed to last for years."[33]

- "The contact owns a Nuna Rava car seat. The contact stated that the tether used to secure the child in the seat had become loosened. The contact stated that her child was able to pull the tether apart. The car seat had not been repaired. The manufacturer was made aware of the failure and opened a case."[34]

- "When the harness is fully tightened and secure my child can easily loosen it by pushing on it. I have sent a video to Nuna for review. If we were in an accident the harness could fully loosen and my child could be propelled out of the seat. We've discontinued use of the seat and are awaiting Nuna's response."[35]

- "My Nuna Rava car seat will not secure my child. The straps will not lock, and are coming loose with the slightest tug on the chest clip. Our 2 year old child can pull the straps loose. I hate to think about what would happen if we were in an accident. I contacted Nuna for a refund, and was informed they would be unable to process returns on behalf of a retail partner. I do not feel like Nuna

---

[30] *Id.* (complaint dated April 1, 2021).

[31] *Id.* (complaint dated August 9, 2021).

[32] *Id.* (complaint dated June 8, 2022).

[33] *Id.* (complaint dated February 21, 2023).

[34] *Id.* (complaint dated June 10, 2023).

[35] *Id.* (complaint dated August 15, 2023).

Rava is a safe car seat for my children. There are 25 complaints on NHTSA, and many seem to be about the same issue. This is also the second Nuna Rava car seat I've personally had to file report on that is defective. We've had five total. Two out of five malfunctioning in the same way is very concerning. I'm hoping these get recalled. I can't believe they haven't already. I just hope a child doesn't get seriously hurt, before action is taken."[36]

- "Harness suddenly started to loosen by itself without pushing on the release mechanism. Extremely dangerous as child is not restrained at all when this happens. After doing some research online, it appears that there may be something stuck in the release mechanism area, but there is no easy way to get to the area to clean it. (Only way is to unscrew the bottom portion of the car seat - which a Nuna representative has said they do not advise doing and also is impractical if you are not at home and have a screwdriver nearby.)"[37]

- "Problem occurred after several months of use. The chest straps will not consistently lock into position, despite the release button not being engaged. They can easily be pulled to loosen again. This does not secure the child into the seat. We have ensured that the strap mechanism is not clogged with debris. We have submitted a claim to the Nuna company."[38]

40.     Consumers have complained directly to Nuna since at least 2021, as noted in these NHTSA complaints.

41.     Consumers have complained directly to Nuna through other means as well. For example, one consumer stated in an online forum in 2021 that they had reported the loosening straps to both NHTSA and Nuna. In response, "Nuna sent me a new seat and said sometimes crumbs or sand can get inside of the seat. Tiny particles can get on the tightening strap from shoes or whatever and when you loosen the harness and the strap goes back inside, the lock traps the particles."[39] The consumer continued: "Yes so scary a cheerio or playground sand could be life or death for my kiddo. Toddlers are such messy creatures! No matter how hard us parents try to keep things clean."[40]

---

[36] *Id.* (complaint dated December 21, 2023).

[37] *Id.* (complaint dated July 16, 2024).

[38] *Id.* (complaint dated July 31, 2024).

[39] https://www.reddit.com/r/beyondthebump/comments/ko0ok5/nuna_rava_car_seat_harness_straps_loosen_when/, *last accessed Feb. 10, 2025.*

[40] *Id.*

42.     Perhaps in response to consumer complaints regarding the dangerous Defect, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster button:

 

43.     This is the exact remedy prescribed by the Recall.

44.     It is clear that Nuna knew about this potentially life-threateningly dangerous Defect for years before notifying the public of the serious risks use of the RAVA posed to infants and children for three reasons: (1) Nuna presumably began designing the redesigned RAVA Car Seat prior to beginning manufacturing, (2) consumers have repeatedly complained about his dangerous Defect since 2021, including directly to Nuna, and (3) Nuna has responded to many consumer complaints, including, but not limited to, Nuna's 2021 acknowledgement to consumers that "sometimes crumbs or sand can get inside of the seat[.]".

45.     This Defect renders the RAVA Car Seats worthless and unusable for their intended purpose of safely transporting babies, toddlers, and young children.

46.     Additionally, Plaintiffs and Class Members substantially overpaid for the defective RAVAs, which have experienced a significant diminution in value and useful life due to this undisclosed Defect and Recall.

47.     Indeed, despite this dangerous Defect, the RAVA Car Seat is expensive—some commenters have called it "super expensive"[41]—compared to similar convertible car seats sold, for example, by Graco Baby for $199.99[42] and Evenflo for $349.98[43], meaning that consumers sometimes spend hundreds of dollars more for the RAVA Car Seat than for competitor car seats. Consumers, including Plaintiffs, were willing to pay this higher price specifically because of the RAVA's reputation for safety and security. Unfortunately, they were sold an unsafe and defective car seat instead.

### C.     Nuna's Voluntary Recall Is Insufficient

48.     Nuna's subsequent Recall fails to make Plaintiffs and Class Members whole. To the contrary, it is ineffective and inadequate for providing consumers with a meaningful remedy for purchasing the defective RAVA.

49.     As an initial matter, the Recall is inadequate because it is illusory. In the two months since the Recall was announced, some Plaintiffs still have not received the promised Cleaning Kits, even when they have requested them repeatedly, leaving them with expensive and dangerous Car Seats with no repair.

50.     In fact, a Nuna employee informed Plaintiff Faridian Kade on or about February 7, 2025 that Nuna had yet to mail out a single Cleaning Kit to any purchaser of the RAVA Car Seat as of that date.

51.     Even for those Plaintiffs who have received the Cleaning Kits, such Cleaning Kits fail to make Plaintiffs and Class Member whole because the Cleaning Kits do not address Plaintiffs' and Class Members' overpayment for or diminution in value of the RAVA Car Seat. No reasonable

---

[41] https://www.babygearlab.com/reviews/vehicle-safety/convertible-car-seat/nuna-rava, *last accessed March 26, 2025.*

[42] https://www.gracobaby.com/car-seats/toddler-car-seats/convertible-car-seats/extend2fit-convertible-car-seat/SAP_1963212.html, *last accessed March 26, 2025.*

[43] https://www.evenflo.com/products/revolve360-all-in-one-car-seat, *last accessed March 26, 2025.*

consumer would purchase a $550 car seat that does not safely fasten, and that instead endangers their child. Nuna was able to demand such a high price only by misleadingly advertising the RAVA as safe and by failing to notify the public of the dangerous Defect.

52.    Further, Nuna failed to recall the entire RAVA Car Seat and instead only advised consumers to clean and replace certain portions of it. By failing to recall the entire RAVA Car Seat, the Recall allows and encourages consumers to continue to use a car seat with the risk of severe injury, and without the benefit of a professional repair.

53.    Instead of recalling the RAVA, offering professional repair of the RAVA, and/or providing consumers with a refund, Nuna offers the Cleaning Kit to ensure the car seat's harness adjuster is kept clean and working properly. Given that Plaintiffs and Class Members are expected to thoroughly clean their own RAVA Car Seat—something which consumers report can be accomplished only with the aid of a screwdriver[44]—and install Nuna's purported repair themselves, these modifications significantly diminish the RAVA's value as a "high-end," premium, or luxury product.

54.    For the same reason, the Recall burdens consumers who are already living busy lives caring for their children and are not trained or experienced in designing or repairing car seats, unlike Defendant.

55.    Further, Nuna advises consumers to immediately stop use of the RAVA Car Seat if the Defect manifests because it creates a substantial safety risk. Parents who need to transport their child are therefore forced to either subject their child to danger or to obtain another car seat that will (unlike the RAVA) safely transport their child during the months Nuna took to send consumers the promised Cleaning Kits, thereby incurring further monetary damages for which Nuna is responsible.

56.    Moreover, the purported repair does not even appear to be available to all consumers at this time. As noted below, Plaintiff Baig has yet to receive his Cleaning Kits.

---

[44]    *See, e.g.*, https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717 (complaint dated July 16, 2024); https://www.reddit.com/r/beyondthebump/comments/ko0ok5/nuna_rava_car_seat_harness_straps_loosen_when/ (describing cleaning RAVA Car Seat "by removing two screws under the leg rest. Once opened I found all sorts of gunk that was restricting the friction on the latch.").

57.    Indeed, Nuna states in its Recall Notice that they will send (only to consumers who specifically request) a letter to "notify owners when the seat pad and cleaning kit are available."[45] It is not clear when that will be.

58.    Nuna's false and misleading marketing of the dangerous RAVA Car Seat, and its knowing failure over *years* to disclose the grave risks of allowing children to use the RAVA Car Seat, allowed Nuna to reap vast profits at the expense of ordinary consumers who erroneously believed their infants and children were safe in Nuna's "premium" car seat.

59.    Every RAVA Car Seat suffers from the uniform Defect, which, unknown to consumers but known to Nuna, exists at the point of purchase and poses an unreasonable safety hazard to infants and children. As such, Plaintiff and Class Members are victims of the unfair bargaining power between them and the Defendant based on Nuna's superior industry knowledge.

## V.    PLAINTIFFS' EXPERIENCES

### A.    Mariana Bernasconi Pelufo

60.    Plaintiff Mariana Bernasconi Pelufo resides in the State of California in San Francisco County.

61.    Ms. Bernasconi Pelufo purchased her first RAVA Car Seat from a brick-and-mortar store in Alameda, California called Tot Tank for $444.44 in September of 2019. She was willing to pay this high price only because of the safety representations made by Defendant.

62.    After her first RAVA Car Seat was involved in a car break-in mere months after she purchased it, Ms. Bernasconi Pelufo purchased a second RAVA Car Seat from Nordstrom for $399.99 in November 2019. Yet again, she was willing to pay this high price only because of the safety representations made by Defendant.

63.    Indeed, Ms. Bernasconi Pelufo conducted extensive research into which car seat to purchase for her child, including looking at labels, packaging, advertisements, and online reviews. Based on Nuna's misleading statements, she believed that the RAVA was the safest car seat on the market. Moreover, the high price of the RAVA caused Ms. Bernasconi Pelufo to believe the RAVA would be safe.

---

[45] Recall Notice.

64.     Ms. Bernasconi Pelufo was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until Nuna published the Recall Notice, over five years after Ms. Bernasconi Pelufo initially purchased the RAVA.

65.     Notably, Ms. Bernasconi Pelufo only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

66.     Ms. Bernasconi Pelufo would not have purchased a RAVA Car Seat, or would have sought materially different terms, had she known the RAVA Car Seat was defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decisions to purchase the RAVA Car Seat.

**B.     Eleisha Sadasey**

67.     Plaintiff Eleisha Sadasey resides in the State of California in Orange County.

68.     Ms. Sadasey purchased her RAVA Car Seat from a brick-and-mortar store, likely a Nordstrom, for approximately six hundred dollars ($600.00) in 2021. She was willing to pay this high price only because of the safety representations made by Defendant.

69.     Indeed, Ms. Sadasey conducted extensive research into which car seat to purchase for her child, including looking at labels, packaging, advertisements, and online reviews. Based on Nuna's misleading statements, she believed that the RAVA was the safest car seat on the market. Moreover, the high price of the RAVA caused Ms. Sadasey to believe the RAVA would be safe.

70.     Ms. Sadasey was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until Nuna published the Recall Notice, over two years after Ms. Sadasey initially purchased the RAVA.

71.     However, Ms. Sadasey was made aware of how misleading Defendant's promises were shortly after purchasing her RAVA Car Seat. Sometime in 2023, Ms. Sadasey was driving alone with her then-two-year-old son, when she realized, to her horror, that her son was out of his

car seat and crawling around in the well of the backseat. She quickly pulled over and got him fastened back into his car seat.

72.    After that incident, Ms. Sadasey was concerned about ensuring her son was buckled in securely, thinking it may have been her error that endangered him. That was not the case. Just a day later, Ms. Sadasey was again driving alone with her son, and again realized that he had gotten out of his car seat and into the well of the backseat.

73.    Notably, Ms. Sadasey only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

74.    Following her discovery of the Recall, Ms. Sadasey completed the online form for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and care instructions.

75.    Since receiving notice of the Recall, Ms. Sadasey has put two and two together: her expensive RAVA Car Seat suffers from an extremely dangerous defect.

76.    Due to the high price of the RAVA Car Seat, Ms. Sadasey spent months afraid that her child would be harmed in an accident, as she was unable to afford to replace the expensive RAVA.

77.    The remedy Nuna has offered through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Ms. Sadasey to overpay in the first place. It does not make Ms. Sadasey whole.

78.    Ms. Sadasey would not have purchased a RAVA Car Seat, or would have sought materially different terms, had she known these Car Seats were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decisions to purchase the RAVA Car Seat.

**C.    Behnaz Faridian Kade**

79.    Plaintiff Behnaz Faridian Kade resides in the State of California in Los Angeles County.

80.    In approximately 2021, Ms. Faridian Kade purchased both a Nuna RAVA Car Seat from Pottery Barn for approximately $550.00 and a different Nuna car seat: the PIPA. However, her child soon outgrew the PIPA car seat and Ms. Faridian Kade decided to replace it with an additional Nuna RAVA Car Seat from Bloomingdales for $547.45 in August of 2022.

81.    Ms. Faridian Kade was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until Nuna published the Recall Notice, over three years after Ms. Faridian Kade initially purchased the RAVA.

82.    Like her fellow Plaintiffs, Ms. Faridian Kade did extensive research into which car seat to purchase for her child, including looking at labels, packaging, advertisements, and online reviews before choosing the RAVA Car Seat. Ms. Faridian Kade chose the RAVA in part because she believed, based on Nuna's misleading statements, that the RAVA was the safest car seat on the market. Moreover, the high price of the RAVA caused Ms. Faridian Kade to believe the RAVA would be safe

83.    Ms. Faridian Kade soon realized that the RAVA Car Seat was not, in fact, safe. Almost immediately after purchasing her RAVA Car Seat, Ms. Faridian Kade began to notice the straps were coming loose. Using a handheld vacuum she purchased specifically for this purpose, Ms. Faridian Kade would vacuum out the coverless front harness adjuster button and re-tighten the straps until they held—a time-consuming and stressful endeavor that left her concerned about the safety of her child.

84.    Notably, Ms. Faridian Kade only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

85.    Following her discovery of the Recall, Ms. Faridian Kade completed the online form for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and care instructions.

86.    Since receiving notice of the Recall, Ms. Faridian Kade has put two and two together: her expensive RAVA Car Seat suffers from an extremely dangerous defect.

87.    Ms. Faridian Kade, fearing for the safety of her child, replaced her RAVA Car Seats at a cost of approximately $120 to her. The replacement car seats lacked the advertised safety and cleanliness features that drew Ms. Faridian Kade to the RAVA—features for which she paid a price premium of over five hundred dollars ($500.00) per RAVA Car Seat.

88.    When Ms. Faridian Kade purchased the replacement car seats, she chose a budget option because she assumed that Nuna would promptly provide her with a Cleaning Kit, enabling her to safely use her RAVA Car Seats once again.

89.    However, Nuna did not provide a Cleaning Kit to Ms. Faridian Kade for over two months, and then finally provided her with a single Cleaning Kit, rather than the two she required. Ms. Faridian Kade was forced to wait even longer for the second Cleaning Kit, and when it arrived it did not match the purposefully-selected color of her remaining RAVA Car Seat.

90.    In fact, on or about February 7, 2025, a Nuna employee informed Ms. Faridian Kade over the phone that Nuna had not mailed out a single Cleaning Kit to any purchaser of a RAVA Car Seat as of that date.

91.    In other words, two months after Nuna announced the Recall of the RAVA Car Seat, Nuna has not provided consumers any remedy at all for the dangerous—potentially fatal—Defect, leaving parents with a $550.00 car seat they could not safely use.

92.    The remedy Nuna has offered through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Ms. Faridian Kade to overpay in the first place. Nor

does it remedy the additional funds Ms. Faridian Kade was forced to expend on replacement car seats. It does not make Ms. Faridian Kade whole.

93.    Ms. Faridian Kade would not have purchased a RAVA Car Seat, or would have sought materially different terms, had she known these RAVA Car Seats were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decisions to purchase the RAVA Car Seat.

**D.    Mirza Baig**

94.    Plaintiff Mirza Baig resides in the State of Virginia.

95.    Mr. Baig has purchased a total of three RAVA Car Seats: two from Nordstrom for $550.00 each and one from Saks Fifth Avenue for $423.99.

96.    Mr. Baig was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until Nuna published the Recall Notice, over two years after Mr. Baig initially purchased the RAVA.

97.    Like his fellow Plaintiffs, Mr. Baig did extensive research into which car seat to purchase for his child, including looking at labels, packaging, advertisements, and online reviews before choosing the RAVA Car Seat. Based on Nuna's misleading statements, he believed that the RAVA was the safest car seat on the market. Moreover, the high price of the RAVA caused Mr. Baig to believe the RAVA would be safe

98.    Mr. Baig was also enticed to purchase the RAVA Car Seat based on Nuna's promise that it would last 10 years.

99.    Mr. Baig soon realized that the RAVA Car Seat was not, in fact, safe. Approximately 9 months after purchasing the RAVA Car Seat, the straps began coming loose on the RAVA Car Seats, sometimes leaving his children insecurely fastened.

100.    Mr. Baig has had to expend extra time and attention on a daily basis to ensure that the straps on his three RAVA Car Seats are not dangerously loose.

101.    Mr. Baig also owns a similar Graco car seat, which does not suffer from loosening straps.

102.    Notably, Mr. Baig only happened to learn of the Recall. He never received formal notice from Nuna of the Recall. Thus, had he not been fortunate enough to happen to hear of this Recall, he likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

103.    Following his discovery of the Recall, Mr. Baig completed the online form for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and care instructions.

104.    The remedy Nuna has offered through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Mr. Baig to overpay in the first place. It does not make Mr. Baig whole.

105.    Moreover, to date, Mr. Baig has not received the new seat pad, cleaning kit, or care instructions.

106.    Mr. Baig would not have purchased a RAVA Car Seat, or would have sought materially different terms, had he known these Car Seats were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decisions to purchase the RAVA Car Seat.

**VI.    TOLLING**

**A.    Continuing Act Tolling**

107.    Nuna continued to market and sell the dangerously defective RAVA Car Seat long after consumers began complaining that it was unsafe. Despite evidence to the contrary, Nuna continuously represented that the RAVA is safe and suitable for securing children and infants while driving.

108.    By continuously repeating false representations and failing to disclose that the RAVA contains a uniform and dangerous Defect, Nuna engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Nuna might seek to apply.

109.    Specifically, as the creator, designer, and manufacturer of the RAVA, Nuna has had actual knowledge likely since at least 2016, and certainly since at least 2021, when consumers began complaining of the Defect online and directly to Nuna, that the RAVA is defectively designed and exposes infants and children to risk of injury and even death.

110.    Moreover, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster button—which Nuna presumably began designing months if not years before it began manufacturing it. This further reveals Nuna's ongoing knowledge of the Defect, and ongoing failure to disclose the Defect to the public.

111.    Nonetheless, Nuna issued the Recall only in December of 2024—*four years* after Nuna first became aware of the Defect via customer complaints, and fourteen months after it began manufacturing the re-designed, (presumably) Defect-free RAVA.

112.    Thus, at all relevant times, Nuna indisputably possessed continuous knowledge of the material dangers posed by the RAVA, and yet Nuna knowingly continued to allow the sale of the RAVA. Plaintiffs' and Class Members' claims are not time barred.

113.    Moreover, even after the Recall was initiated, there is no evidence that Nuna's Recall Notice has reached all owners of the RAVA Car Seats.

114.    Plaintiffs and Class Members could not have reasonably discovered and could not have known of these facts, which Nuna publicly disclosed for the first time mere months ago. Indeed, until it issued the Recall, Nuna knowingly failed to disclose material information regarding the existence of the Defect in all RAVAs manufactured before October 25, 2023. Accordingly, no potentially relevant statute of limitations should apply.

**B.    Fraudulent Concealment Tolling**

115.    Any applicable statutes of limitations have been tolled or have not run for the additional reason that Nuna knowingly, actively, and fraudulently concealed the facts as alleged herein. Nuna had actual and constructive knowledge of the potentially fatal Defect in the RAVA Car Seat for, *at minimum*, fourteen months before announcing the Recall.

116. Plaintiffs and Class Members have been kept in ignorance of information essential to the pursuit of their claims, and the safety of their children, without any fault or lack of diligence on their part. Nuna's concealment of the Defect in the RAVA before, during, and after the purchases of Plaintiffs' RAVA Car Seats prevented them from being on notice of any facts or information that would have required them to inquire whether Nuna fulfilled its duties under the law and, if not, whether Plaintiffs and Class Members had legal recourse.

117. At all times prior to, during, and since the purchase of Plaintiffs' and Class Members' RAVA Car Seats, Nuna has been under a continuing duty to disclose the true facts regarding the safety Defect in the RAVA. Because of Nuna's willful concealment of material information concerning the RAVA over a period of years, Nuna is estopped from relying on any statute of limitations defense as to the claims of Plaintiffs and Class Members.

### C.    Discovery Rule Tolling

118. Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their RAVA Car Seats were defective within the time period of any applicable statutes of limitation because, as described herein, only Nuna had that information, and Nuna was concealing that information from the public.

119. Indeed, Plaintiffs first became aware of the RAVA's dangerous Defect and safety risks when they learned of the Defect's existence through Nuna's Recall (for which many Plaintiffs and Class Members have still yet to formal notice).

120. Plaintiffs and other Class Members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Nuna was manufacturing and marketing the RAVA Car Seat despite being aware it contained a dangerous Defect.

121. As such, no potentially relevant statute of limitations should be applied.

**VII.    CLASS ACTION ALLEGATIONS**

122.    Pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and others similarly situated.

123.    Plaintiffs seek to represent a Nationwide class, defined as: "All persons in the United States who purchased (not for resale) a RAVA Car Seat manufactured between July 16, 2016 and October 25, 2023 (the "Class")."

124.    Plaintiffs Bernasconi Pelufo, Sadasey, and Faridian Kade also seek to represent a Subclass defined as: "All persons in California who purchased (not for resale) a RAVA Car Seat (the "California Subclass")."

125.    Plaintiff Baig also seeks to represent a Subclass defined as: "All persons in Virginia who purchased (not for resale) a RAVA Car Seat manufactured between July 16, 2016, to October 25, 2023 (the "Virginia Subclass")."

126.    At this time, Plaintiffs do not know the exact number of members of the Class or California Subclass or Virginia Subclass; however, given the nature of the claims and the number of retail stores in the United States selling the RAVA Car Seats, Plaintiffs believe that members of the Class and Subclasses are so numerous that joinder of all members is impracticable.

127.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and Subclasses that predominate over questions that may affect individual Class Members include:

- Whether Defendant's conduct was unfair, deceptive, and/or misleading under applicable law;

- whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Class and Subclasses;

- whether Defendant breached its express and/or implied warranties to Plaintiffs and the Class and Subclasses;

- whether Plaintiffs and the Class and Subclasses have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages;

- whether Defendant made negligent representations with regards to the RAVA Car Seats; and

- whether Defendant has violated the state consumer protection laws alleged in this complaint.

128.    Plaintiffs' claims are typical of those of the Class and Subclasses because Plaintiffs, like all members of the Class and Subclasses, purchased and used, in a typical consumer setting, Defendant's RAVA Car Seat and Plaintiffs sustained damages from Defendant's wrongful conduct.

129.    Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses and have retained counsel that is experienced in litigating complex consumer protection class actions. Plaintiffs have no interests which conflict with those of the Class or the Subclasses.

130.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

131.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making appropriate equitable relief with respect to the Class and Subclasses as a whole.

132.    The prosecution of separate actions by members of the Class and Subclasses would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and Subclasses even where certain Class Members are not parties to such actions.

## VIII.   CLAIMS FOR RELIEF

<u>**COUNT ONE**</u>
**Breach of the Implied Warranty of Merchantability**

133.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

134.    Plaintiffs bring this claim individually and on behalf of members of the Class. In the alternative, Plaintiffs bring this claim on behalf of the California (Cal. Com. Code §§2314, 10212) and Virginia (Virginia Code § 8.2-314) Subclasses.

135.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the RAVA Car Seats are merchantable as a convertible car seat for infants and children.

136.    Defendant breached the warranty implied in the contract for the sale of the RAVA Car Seat because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." See U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiffs and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

137.    Plaintiffs and Class Members purchased the RAVA Car Seats relying on Defendant's skill and judgment in properly packaging and labeling the RAVA Car Seats.

138.    The RAVA Car Seats were not altered by Plaintiffs or Class Members.

139.    The RAVA Car Seats were defective when they left the exclusive control of Defendant.

140.    Defendant knew that the RAVA Car Seats would be purchased and used without additional testing by Plaintiffs and Class Members.

141.    The RAVA Car Seats were defectively designed and unfit for their intended purpose and Plaintiffs and Class Members did not receive the goods as warranted.

142.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class Members have been injured and harmed because they would not have purchased the RAVA Car Seats if they knew the truth about the RAVAs, and because the car seats they received were worth substantially less than the Car Seats they were promised and expected.

143.    On behalf of themselves and other members of the class, Plaintiffs seek damages.

**COUNT TWO**
**Breach of Express Warranty**

144.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

145.    Plaintiffs bring this claim individually and on behalf of members of the Class. In the alternative, Plaintiffs bring this claim on behalf of the California (Cal. Com. Code §§ 2314, 10212) and Virginia (Virginia Code §§ 8.2-316, 59.1-504.2) Subclasses.

146.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the RAVA Car Seats are merchantable as a convertible car seat for infants and children.

147.    Defendant breached the warranty implied in the contract for the sale of the RAVA Car Seat because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiffs and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

148.    Plaintiffs and Class Members purchased the RAVA Car Seat relying on Defendant's skill and judgment in properly designing, manufacturing, packaging, and labeling the RAVAs.

149.    The RAVA Car Seats were not altered by Plaintiffs or Class Members.

150.    The RAVA Car Seats were defective when they left the exclusive control of Defendant.

151.    Defendant knew that the RAVA Car Seats would be purchased and used without additional testing by Plaintiffs and Class Members.

152.    The RAVA Car Seats were defectively designed and unfit for their intended purpose and Plaintiffs and Class Members did not receive the goods as warranted.

153.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class Members have been injured and harmed because they would not have

1   purchased the RAVA Car Seats if they knew the truth about the RAVAs and that the RAVAs they

2   received were worth substantially less than the Car Seats they were promised and expected.

3         154.    On behalf of themselves and other members of the class, Plaintiffs seek damages.

4

5

**COUNT THREE**
**Breach of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301,** *et seq.*

6         155.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

7   complaint as though fully set forth herein.

8         156.    Plaintiffs bring this claim individually and on behalf of the members of the Class

9   against Defendant. In the alternative, Plaintiffs bring this claim on behalf of the California and

10   Virginia Subclasses.

11         157.    Plaintiffs and the other class members are "consumers" within the meaning of the

12   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

13         158.    Nuna is a "supplier" and "warrantor" within the meaning of

14   15 U.S.C. § 2301(4)-(5).

15         159.    The RAVA Car Seats are "consumer products" within the meaning of § 2301(1).

16         160.    Nuna's express warranty is a "written warranty" within the meaning of § 2301(6).

17         161.    As detailed above, Nuna breached its warranty obligations by failing to provide a

18   product that conformed to the promises and affirmations Nuna made about the RAVA Car Seats,

19   by failing to truthfully advertise and warrant that the RAVA Car Seats were safe, free of defect,

20   and fit for their intended purpose. The Defect in the RAVA Car Seats existed at the time the RAVA

21   Car Seats left Nuna's control and Nuna failed to disclose the existence of the Defect either prior to,

22   at the point of, or following sale of the RAVAs, including when customers contacted Nuna to

23   inquire about the RAVA's failures. Nuna's conduct has rendered the warranties null and caused

24   them to fail of their essential purpose.

25         162.    Nuna's breach of warranty deprived Plaintiffs and Class Members of the benefit of

26   their bargain.

27         163.    The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive

28   of interest and costs) computed on the basis of all claims to be determined in this suit.

164. Further, pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiffs, on behalf of themselves and Class Members, sent notice to Nuna to provide it with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

165. In addition, resorting to any sort of informal dispute settlement procedure or affording Nuna another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Nuna has repeatedly mispresented the true quality and nature of the RAVA Car Seat, and has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiffs submit to any informal dispute settlement procedure or otherwise afford Nuna reasonable opportunity to cure its breaches of warranty is excused and/or has been satisfied.

**COUNT FOUR**
**Unjust Enrichment**

166. Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

167. Plaintiffs bring this claim individually and on behalf of members of the Class against Defendant. In the alternative, Plaintiffs bring this claim on behalf of the California and Virginia Subclasses.

168. Plaintiffs and Class Members conferred benefits on Defendant by purchasing the RAVA Car Seat.

169. Defendant has knowledge of such benefits.

170. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the RAVA Car Seat. Retention of those monies under these circumstances is unjust and inequitable because Defendant represented that the RAVA Car Seat are safe for its principal use of safely transporting children when it is not.

171. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court.

## COUNT FIVE
**Negligent Misrepresentation**

172.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

173.    Plaintiffs bring this claim individually and on behalf of the members of the Class. In the alternative, Plaintiffs bring this claim on behalf of the California and Virginia Subclasses.

174.    As discussed above, Defendant represented that the RAVA Car Seats are safe for their principal use of safely transporting children. However, Defendant failed to disclose that the RAVA Car Seats are not safe and use of the RAVA Car Seats could cause severe injury or even death to an infant or child while using the RAVA.

175.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

176.    At an absolute minimum, Defendant negligently misrepresented material facts about the safety of the RAVA Car Seats.

177.    The negligent misrepresentations made by Defendant, upon which plaintiffs and the Class reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class to purchase the RAVA Car Seats.

178.    The negligent actions of Defendant caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

## COUNT SIX
**Violations of the California Consumers Legal Remedies Act,**
**Cal. Civ. Code §§1750, *et seq*.**

179.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

180.    Plaintiffs Bernasconi Pelufo, Sadasey, and Faridian Kade bring this claim on behalf of themselves and the California Subclass.

181.    Plaintiffs and the Class Members are "consumers" that purchased "goods" in the form of the RAVA Car Seat within the meaning of California Civil Code section 1761. The

1  application of the California Consumer Legal Remedies Act to the putative Class in this action is

2  appropriate because Defendant's wrongful conduct alleged herein includes but is not limited to

3  Defendant's marketing and sale of defective, unsafe RAVA Car Seats in the state of California.

4      182.   Defendant is a "person" within the meaning of California Civil Code

5  section 1761(c).

6      183.   Defendant violated California Consumer Legal Remedies Act, Civil Code

7  section 1770(a)(5), *inter alia*, by representing that the RAVA Car Seat has characteristics, uses or

8  benefits, which it does not have, and/or Civil Code section 1770(a)(7) by representing that the

9  RAVA Car Seat is of a particular standard, quality, or grade, even though it is of another. Such

10  conduct includes, among other things:

11      a.   Designing, manufacturing, marketing, and selling the RAVA Car Seat

12  consumers that contained material, fundamental defects without disclosing such defects

13  to consumers;

14      b.   Marketing and selling the RAVA Car Seat when it was not merchantable for

15  the purpose of providing safe transportation for infants and small children;

16      c.   Marketing and selling the RAVA Car Seat while concealing material facts

17  from Plaintiffs and Class Members regarding the defects in the RAVA Car Seats that would

18  manifest both within and outside their express or implied warranty periods that would create a

19  safety risk for Plaintiffs and Class Members who purchased the RAVAs to provide safe and reliable

20  transportation for their infants and small children;

21      d.   Concealing from` Class Members that Defendant was in breach and intended

22  to breach its warranty obligations as set forth in this complaint.

23      184.   Concurrently with the filing of the instant Complaint, Plaintiffs are sending a CLRA

24  notice of violation and demand letter to Defendant Nuna. Upon response, or non-response within

25  thirty (30) days, to this notice, Plaintiff shall file, or seek leave to file, an Amended Complaint to

26  seek monetary relief from Nuna to provide actual, compensatory, statutory, and/or

27  punitive damages.

28

## COUNT SEVEN
### Unlawful, Unfair, and Fraudulent Business Acts and Practices
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

185.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

186.    Plaintiffs Bernasconi Pelufo, Sadasey, and Faridian Kade bring this claim on behalf of themselves and the California Subclass.

187.    Defendant's acts and practices constitute unlawful, unfair, and fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The application of the Unfair Competition Law to the putative Class in this action is appropriate because Defendant's wrongful conduct alleged herein, includes but is not limited to Defendant's marketing and sale of defective, unsafe RAVA Car Seats in the state of California.

188.    Defendant engaged in fraudulent, unlawful and unfair business practices in violation of the Unfair Competition Law by, among other things:

a.      Designing, manufacturing, marketing and selling the RAVA Car Seat to consumers when it contained material, fundamental defects without disclosing such defects to consumers;

b.      Marketing and selling RAVA Car Seats that were not merchantable for the purpose of providing safe transportation for infants and small children;

c.      Marketing and selling RAVA Car Seats while concealing material facts from Plaintiff and Class Members regarding the defects in the RAVAs that would manifest both within and outside their express or implied warranty periods that would create a safety risk for Plaintiff and Class Members who purchased the RAVA Car Seats to provide safe transportation for infants and small children;

d.      Concealing from Class Members that Defendant was in breach and intended to breach its warranty obligations as set forth in this complaint;

e.      Violating additional laws and regulations as set forth herein; and

f.      Breaching its express and implied warranties with Class Members as set forth herein.

189.    Defendant also violated the Unfair Competition Law because the utility of its conduct as described in this Complaint is outweighed by the gravity of the consequences to Plaintiffs and Class Members and because Defendant's conduct as described in this Complaint is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs and Class Members.

190.    Plaintiffs, on behalf of themselves and Class Members, have suffered injury in the form of lost money and property, including but not limited to a diminishment in the value and useful life of the RAVA Car Seat, as a direct and proximate result of Defendant's fraudulent, unlawful, and unfair business practices and are therefore entitled to equitable relief, including restitution, disgorgement of profits Defendant obtained from its fraudulent, unlawful and unfair business practices, and a permanent injunction that enjoins Defendant from the unlawful practices described herein, as well as attorneys' fees and costs of suit. Cal. Bus. & Prof. Code § 17203.

**COUNT EIGHT**
**Violation of California False Advertising Law,**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

191.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

192.    Plaintiffs Bernasconi Pelufo, Sadasey, and Faridian Kade bring this claim on behalf of themselves and the California Subclass.

193.    Each of the above deceptive and misleading advertising practices of Defendant set forth above constitutes untrue or misleading advertising under the California False Advertising Law ("FAL"), California Business & Professions Code section 17500, *et seq.*

194.    At all material times, Defendant's statements and marketing and advertising materials misrepresented or omitted material facts regarding the safety of Defendant's RAVA Car Seat as set forth in this Complaint. Defendant is disseminating statements, marketing and advertising concerning the safety of its RAVA Car Seat that are unfair, untrue, deceptive, or misleading within the meaning of California Business & Professions Code section 17500, *et seq.* Defendant's acts and practices have deceived and/or are likely to continue to deceive Plaintiffs, members of the California Subclass, and the public. As set forth above, Defendant's safety and

quality claims are deceptive and misleading to reasonable consumers because the coverless front harness adjuster button on the RAVA Car Seat is defective, making the RAVA extremely hazardous as it fails to meet average standards of safety. Moreover, Defendant intentionally does not disclose any of this information to consumers and instead represents that the RAVA Car Seat is beyond average levels of safety.

195. In making and disseminating the statements alleged herein, Defendant knew or should have known its advertisements were deceptive and misleading. Plaintiffs and members of the California Subclass based their decisions to purchase and use Defendant's RAVA Car Seat on Defendant's misrepresentations and omissions of material facts.

196. Plaintiffs and California Subclass members are entitled to relief, including enjoining Defendant to cease and desist from engaging in the practices described herein, as well as a declaration of rights that Defendant's safety claims are deceptive and misleading.

<u>**COUNT NINE**</u>
**Violation of The Song-Beverly Consumer Warranty Act,**
**Cal. Civ. Code §§ 1790 *et seq*.**

197. Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

198. Plaintiffs Bernasconi Pelufo, Sadasey, and Faridian Kade bring this claim on behalf of themselves and the California Subclass.

199. Defendant violated the Song-Beverly Consumer Warranty Act by, among other things, violating the implied warranties of merchantability by knowingly selling defective RAVA Car Seats that are unsuitable for their expected use in violation of sections 1791.1 and 1791.2, and were therefore not fit for the ordinary purpose for which the goods were intended to be sold.

200. Plaintiffs and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants conduct described herein.

201. Plaintiffs seek restitution and damages as a result of Defendant's unlawful conduct, as well as attorneys' fees and costs of suit.

**COUNT TEN**
**Violations of the Virginia Consumer Protection Act,**
**Virginia Code § 59.1-196,** *et seq.*

202.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

203.    Plaintiff Baig brings this claim on behalf of himself and the Virginia Subclass.

204.    Plaintiffs and the Class Members are consumers that purchased, via a "consumer transaction," "children's products" and "goods" in the form of the RAVA Car Seat from Defendant Nuna, which is a "supplier" within the meaning of Virginia Code § 59.1-198. The application of the Virginia Consumer Protection Act to the putative Class in this action is appropriate because Defendant's wrongful conduct alleged herein, includes but is not limited to Defendant's marketing and sale of defective, unsafe RAVA Car Seats in the state of Virginia.

205.    Defendant violated § 59.1-200 of the Virginia Consumer Protection Act by representing that the RAVA Car Seat has characteristics, uses or benefits, which it does not have, is of a particular standard, quality, or grade, even though it is of another, and by advertising the RAVA for sale despite it having a "defect[]," "blemish[]," or "imperfect[ion]" that is not clearly and unequivocally indicated in the advertisements for the RAVA Car Seat. Such conduct includes, among other things:

a.    Designing, manufacturing, marketing, and selling the RAVA Car Seat consumers that contained material, fundamental defects without disclosing such defects to consumers;

b.    Marketing and selling the RAVA Car Seat when it was not merchantable for the purpose of providing safe transportation for infants and small children;

c.    Marketing and selling the RAVA Car Seat while concealing material facts from Plaintiffs and Class Members regarding the defects in the RAVA Car Seats that would manifest both within and outside their express or implied warranty periods that would create a safety risk for Plaintiffs and Class Members who purchased the RAVAs to provide safe and reliable transportation for their infants and small children;

d.      Concealing from Class Members that Defendant was in breach and intended to breach its warranty obligations as set forth in this complaint.

206.    In making and disseminating the statements alleged herein, Defendant knew or should have known its advertisements were deceptive and misleading. Plaintiffs and members of the Virginia Subclass based their decisions to purchase and use Defendant's RAVA Car Seat on Defendant's misrepresentations and omissions of material facts.

207.    Plaintiffs and Virginia Subclass members are entitled to relief, including enjoining Defendant to cease and desist from engaging in the practices described herein, as well as a declaration of rights that Defendant's safety claims are deceptive and misleading.

208.    Plaintiffs additionally seek restitution and damages as a result of Defendant's unlawful conduct, as well as attorneys' fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment individually, and on behalf of themselves, and members of the Class, as follows:

A.      For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses, and Plaintiffs' attorneys as Class Counsel;

B.      For an order declaring that Nuna's conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiffs, the Class, and/or the Subclasses on all counts asserted herein;

D.      For actual, compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For injunctive relief enjoining the illegal acts detailed herein;

F.      For prejudgment interest on all amounts awarded;

G.      For an order of restitution and all other forms of equitable monetary relief;

H.      For an order awarding Plaintiffs, the Class, and Subclasses their reasonable attorneys' fees and expense and costs of suit.

1

**JURY TRIAL DEMAND**

2

Plaintiffs demand a trial by jury on all issues so triable.

3

Respectfully submitted,

4

DATED: March 31, 2025          **KAPLAN FOX & KILSHEIMER LLP**

5

By:   /s/ *Matthew B. George*
              Matthew B. George

6

7

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)

8

Clarissa R. Olivares (SBN 343455)
1999 Harrison Street, Suite 1560

9

Oakland, CA 94612
Telephone: 415-772-4700

10

Facsimile: 415-772-4707
Email:    *lking@kaplanfox.com*

11

*mgeorge@kaplanfox.com*
*breed@kaplanfox.com*

12

*colivares@kaplanfox.com*

13

*Attorneys for Plaintiffs Mariana Bernasconi Pelufo,*
*Eleisha Sadasey, Behnaz Faridian Kade, Mirza Baig, and*

14

*the Proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28